El Pueblo de Puerto Rico, demandante y apelado, *v.* Pedro Zorrilla Porrata, acusado y apelante.

Núm. 7233.—*Sometido:* Enero 13, 1939. *Resuelto:* Febrero 15, 1939.

*Samuel R. Quiñones,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del Tribunal.

Después de celebrado un juicio *de novo* en este caso, la Corte de Distrito de Bayamón sentenció a Pedro Zorrilla Porrata a pagar $75 de multa y las costas, o en defecto de pago a la prisión subsidiaria correspondiente.

La denuncia imputó al acusado una infracción de la Ley de Automóviles (Núm. 75 de 1916, pág. 144), consistente en que mientras el acusado guiaba su automóvil por la carretera núm. 2, Km. 8, H. 3, con dirección a Bayamón, dejó de tomar las precauciones razonables para garantizar la seguridad de vidas y propiedades, tales como no marchar lo más a su derecha posible, dejar de regular la velocidad de su vehículo marchando a velocidad exagerada, y no dar aviso con el aparato de alarma no obstante hallarse en una curva, dando lugar con ello a un choque con otro automóvil que a la sazón venía de Bayamón para San Juan, guiado por Ramón Casanovas, como resultado del cual salieron heridos el propio acusado, Casanovas, y sus dos compañeros de viaje Ana Rodríguez y Manuel Medina, sufriendo también desperfectos de consideración ambos automóviles.

El acusado interpuso recurso de apelación para ante este tribunal, imputando a la corte sentenciadora la comisión de

tres errores que en realidad constituyen uno solo, que puede exponerse así:

"La corte cometió error en la apreciación de la prueba."

Según Casanovas y sus testigos, Ana Rodríguez y Manuel Medina, Casanovas venía por su derecha, tocando *klaxon*, despacio, cuando súbitamente y sin dar aviso alguno, a pesar de hallarse la carretera mojada, se enfrentaron con el acusado, quien venía a una exagerada velocidad por la derecha de Casanovas. Que este último, Casanovas, al advertir el peligro, frenó su automóvil y recibió el impacto del carro del acusado, como consecuencia del cual sufrió la fractura de la rodilla derecha y su compañera de viaje, Ana Rodríguez, la de una clavícula. Que el choque de los dos automóviles fué de frente, acentuándose los desperfectos hacia el lado derecho del automóvil de Casanovas e izquierdo del de Zorrilla, resultando el primero con ciertas averías, entre ellas la de la rueda derecha, que quedó destrozada. Que detrás del automóvil de Casanovas, momentos antes del accidente, venía otro que él pudo ver por el espejo de su automóvil y hasta leer el número de la tablilla. Que este automóvil le pidió derecha y Casanovas se la dió, pero hallándose en una curva, prefirió seguir detrás de Casanovas hasta que después del choque pasó adelante, viniendo entonces las dos personas que viajaban en el mismo donde Casanovas a ofrecerle sus servicios para llevarlo a una clínica. Aceptó Casanovas y por su propia indicación lo condujeron a la Clínica Díaz García.

Declararon Casanovas y sus testigos que tres minutos después llegó una ambulancia que iba de San Juan con una *nurse* y que ésta le ofreció llevarlo en la ambulancia, lo que él rehusó por haber aceptado ya la invitación que le habían hecho los ocupantes del automóvil que venía detrás de él. Declaró además Casanovas que él no recuerda haber hablado con Zorrila en el sitio del accidente. Ana Rodríguez, sin embargo, declaró que Casanovas, dirigiéndose a Zorrilla, le

dijo: "¡La que me has hecho!" Zorrilla no le contestó y siguió caminando a lo largo de la carretera hacia Bayamón. Tanto Ana Rodríguez como Manuel Medina corroboran sustancialmente la declaración de Casanovas.

El otro testigo de cargo, el cabo de la policía insular, Andrés Ramos, no presenció el accidente, pero observó la posición en que quedaron los carros. Declaró este testigo que los automóviles quedaron sesgados más hacia la derecha, de San Juan para Bayamón, que del costado opuesto.

Esta fué, en síntesis, la prueba de cargo, debiendo agregar para su mejor apreciación, que tanto Ana Rodríguez como Manuel Medina, a quien según Casanovas llaman "Chivo", viajaban gratuitamente en el automóvil, y que Ana Rodríguez venía con Manuel Medina a ver una hija de éste que se hallaba entonces en San Juan, y que Ana, hasta unos días antes del accidente, estuvo trabajando en la casa del padre de Casanovas, circunstancia ésta que negó al principio pero que más tarde admitió a repreguntas de la defensa, cuando ésta le recordó la declaración que anteriormente había prestado en la corte municipal.

Veamos ahora la prueba de descargo: El acusado describe el accidente en los siguientes términos:

"Allá a fines de julio venía hacia Bayamón; eran como de nueve a diez de la mañana y al llegar al sitio donde están haciendo el Hospital de Distrito de Bayamón, donde hay una bajada y donde hay una curva, que hay una alcantarilla, esa curva en su medio es bastante más angosta que en las partes donde termina de aquí para allá y lo mismo de allá para acá; desde arriba venía una ambulancia detrás de mí; veníamos bajando; veníamos poco a poco porque estaba mojado y no se podía correr; esa cuesta tiene varias curvas y ya al llegar a la curva, en la parte más aguda de la curva, de momento ví que salió un carro patinando, entonces me desvié para la derecha y saqué la mano para la ambulancia y me paré instantáneamente; al pararme, aquel carro que venía medio sesgado se enderezó hacia mí y me dió en la derecha y quedamos chocados ahí. A mí se me fué el conocimiento, muy poco, sería cuestión de segundos, entonces abrí la puerta, dí la vuelta al carro y fuí donde el otro que chocó

conmigo; estaba herido en una mano y le dije: ¿Qué ha hecho, que por poco me mata?', y este señor Casanovas contestó: 'No pude evitarlo, se me trancaron los frenos al coger la curva.' En eso había apeado el chófer y la *nurse* de la ambulancia en el momento; después que la niñita—que fué la primera que se apeó del carro—venían unos carros públicos y se lo llevaron a él porque él dijo que no podía montarse en la ambulancia porque la señora lo invitó primero que a mí, porque él estaba botando sangre; yo no estaba botando sangre; y se lo llevaron a la clínica Díaz García, porque él era pariente del Dr. Díaz García. Yo dejé dos muchachos cuidando y me vine a buscar la policía. Yo estaba bastante herido con unas contusiones en la rodilla que apenas podía andar, entonces la *nurse* me echó un poco de alcohol por la espalda y pude llegar hasta Bayamón, donde vine a buscar la policía.

"P. ¿Estuvo acostado después?

"T. Como dos semanas.

"P. ¿Viaja mucho por esa carretera?

"T. Doce o trece años hace que viajo; todos los días un día sí y otro no, que vengo a Bayamón.

"P. ¿En qué gestiones?

"T. Soy vendedor.

"P. ¿Conoce esa carretera?

"T. Por espacio de diez o doce años que viajo ahí casi diariamente.

"P. ¿Qué precauciones toma cuando la carretera está mojada?

"T. En la carretera esa, cuando la brea se moja, es muy resbalosa para los automóviles y hay que ir muy despacio; no se puede correr porque patina el carro.

"P. A la entrada de la curva, viniendo de Bayamón o yendo de Bayamón hacia San Juan, ¿cómo es el declive?

"R. Hacia la derecha." (R., págs. 94–96.)

La declaración de Zorrilla está corroborada por la de María Velázquez y Ernesto Rodríguez, testigos presenciales del accidente, y por la del cabo de la policía insular Sr. Andrés Ramos, en cuanto declaró que poco después del choque llegó al sitio del accidente y pudo observar que los dos automóviles quedaron más bien hacia el lado derecho, yendo de San Juan para Bayamón, de tal manera que el tránsito continuó sin interrupción por el lado izquierdo de la misma dirección, o sea,

por la izquierda de San Juan a Bayamón. También fué corroborada en cuanto a este mismo punto por la declaración de Víctor J. Barreras, ingeniero mecánico, quién llegó al sitio llamado por Zorrilla, para tomar unas fotografías demostrando los desperfectos con que habían quedado los vehículos.

Declaró Barreras que cuando llegó allí ya se habían traído para San Juan el automóvil de Zorrilla y que ayudó a la policía a levantar por detrás el de Casanovas para enderezarlo, alineándolo hacia el costado izquierdo, viniendo de Bayamón para San Juan, que era el más próximo al sitio donde quedó el automóvil y precisamente la dirección por donde caminaba Zorrilla, según él y sus testigos.

Los testigos María Velázquez y Ernesto Rodríguez declararon que el acusado marchaba a muy corta distancia delante de la ambulancia en que ellos venían, que ésta caminaba a muy poca velocidad y que al llegar a la curva y ver que venía el automóvil de Casanovas observaron que el acusado sacó la mano y paró su carro, y que la ambulancia hizo lo mismo, quedando a muy corta distancia de Zorrilla, quien en ningún momento abandonó su derecha.

La prueba es claramente contradictoria. Sin embargo, surgen ciertos hechos incontrovertibles que dan la luz necesaria para resolver el conflicto de la evidencia. Uno de estos hechos es que al ocurrir el choque ambos carros quedaron uno frente al otro, al costado derecho de la carretera yendo de San Juan hacia Bayamón. Esta circunstancia indica que el choque no pudo ocurrir a la derecha, por donde venía Casanovas, como lo aseguran éste y sus dos testigos. Por el contrario ese hecho corrobora la versión de Zorrilla y demás testigos de descargo. Si el automóvil de Casanovas hubiese venido tan cerca del margen derecho de la carretera, dirección de Bayamón a San Juan, y los dos automóviles hubieran chocado de frente, como en efecto sucedió, de no irse a la cuneta el carro de Casanovas, hubiese quedado siempre en su derecha, pero nunca a la izquierda del camino, de frente al de Zorrilla, y con la parte trasera ligeramente ses-

gada hacia su derecha. Otra circunstancia que hace más probable la teoría de Zorrilla es que la carretera estaba mojada, que existía un desnivel en la misma de izquierda a derecha (dirección de San Juan a Bayamón), y que el mismo Casanovas declaró que frenó su automóvil, y siendo como es de conocimiento general que una carretera embreada que se halle mojada es resbaladiza y que el usar los frenos súbitamente por lo general obliga a patinar el vehículo, con toda probabilidad el accidente tuvo lugar en la forma descrita por el acusado Zorrilla, es decir, al patinar el carro en que venía Casanovas se colocó frente al de Zorrilla y fué así como se causó el choque.

Otra circunstancia que también debilita la prueba de cargo es que el fiscal dejó de citar a los dos individuos que condujeron a Casanovas al hospital, individuos que en el momento del accidente venían justamente detrás del automóvil de Casanovas, que pudieron presenciarlo fácilmente, y cuyas declaraciones hubieran dado gran luz en el asunto, pues contrario a lo que sucede con las de los testigos Ana Rodríguez y Manuel Medina, personas completamente interesadas a favor de Casanovas, no tenían aquéllos interés alguno en el caso y sus declaraciones como testigos presenciales hubieran sido probablemente decisivas.

A nuestro juicio la preponderancia de la prueba está claramente a favor del acusado y tratándose como se trata de un caso criminal en que el acusado se presume inocente y su culpabilidad debe probarse más allá de duda razonable, sostenemos que la corte cometió error al apreciar la prueba, declarando culpable al acusado, no dándole por lo menos el beneficio de la duda.

*Procede, por lo expuesto, revocar la sentencia apelada y absolver al acusado.*